George **VELAZQUEZ**, Calup Shepard, Marguerita Ramirez, and Ella Delrio DeSapio, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Edward **THOMPSON**, as Administrative Judge of the Civil Court of the City of New York, George Abrams, Fred G. Moritt, and James W. Feely, as Judges of the Civil Court of the City of New York, Min Silberzweig, Sterling Realties, 240 Baltic, Inc., All States Terminal Corp., Leo Georgio, Louis Karp, Herbert Klein, individually and as Marshal of the City of New York, Defendants.

No. 70 Civ. 3146.

United States District Court, S. D. New York.

Sept. 1, 1970.

Morton P. Cohen, Brooklyn, N. Y., for plaintiffs; Harold J. Pokel, Brooklyn, Gertrude Schwartz, Oscar Chase, New York City, Jane R. Stern, Brooklyn, of counsel.

Louis J. Lefkowitz, Atty. Gen. of N. Y., New York City, for defendant Thompson; Steven M. Hochberg, Deputy Asst. Atty. Gen., of counsel.

Jacob Silberzweig, Brooklyn, N. Y., for defendant Min. Silberzweig.

## OPINION

COOPER, District Judge.

This action challenges the constitutionality of the New York statutory scheme which sets forth the procedure for summary proceedings to recover possession of real property by the landlord for nonpayment of rent. § 732 of the Real Property Actions and Proceedings Law (RPAPL), McKinney's Consol. Laws, c. 81 the heart of the repossession procedure, provides that if a tenant has defaulted in the payment of rent, the landlord may institute a summary proceeding for repossession,[1] by service of a notice of petition and petition upon the tenant returnable before the clerk of the Court five (5) days after service.[2]

The petition must be verified and include a recital of the factual basis of the claim, § 741 RPAPL;[3] the notice of petition may be issued only by a judge or clerk of the Court.[4] Upon the return

---

1. This proceeding may be commenced only after § 711(2) RPAPL has been satisfied: "The tenant has defaulted in the payment of rent, pursuant to the agreement under which the premises are held, and a demand of the rent has been made, or at least three days' notice in writing requiring, in the alternative, the payment of the rent, or the possession of the premises, has been served upon him as prescribed in section 735. * * *"

2. § 732 provides: "If the appropriate appellate division [of the New York Supreme Court] shall so provide in the rules of a particular court, this section shall be applicable in such court in a proceeding brought on the ground that the respondent has defaulted in the payment of rent; in such event, all other provisions of this article shall remain applicable in such proceedings, except to the extent inconsistent with the provisions of this section.
　1. The notice of petition shall be returnable before the clerk, and shall be made returnable within five days after its service."
This provision was made applicable to summary proceedings in the Civil Court of the City of New York by adoption of an amendment to Rule 21 of the Rule of the Civil Court of the City of New York and the enactment of Rule 34 by the Appellate Divisions of the First and Second Departments.

3. § 741 provides: "The petition shall be verified and shall:
　1. State the interest of the petitioner in the premises from which removal is sought.
　2. State the respondent's interests in the premises and his relationship to petitioner with regard thereto.
　3. Describe the premises from which removal is sought.
　4. State the facts upon which the special proceeding is based.
　5. State the relief sought. * * *"

4. Although § 731 RPAPL provides that: "A notice of petition may be issued only by an attorney, judge or the clerk of the court; it may not be issued by a party prosecuting the proceeding in person."
§ 401 New York Civil Court Act further restricts the class who may issue the notice to the judge or clerk of the court,

date, if the tenant interposes an answer, the clerk sets a trial date not less than three nor more than eight day after joinder of issue. § 732(2) RPAPL. However, if the tenant fails to answer within five days from the date of service, as shown by the affidavit or certificate of service of the notice of petition and petition, the judge is directed to render judgment in favor of the petitioning landlord. § 732(3) RPAPL.

Upon a final judgment for the petitioner, after trial on the merits or default by the tenant, the court issues a warrant directing the City Marshal to remove the tenant and return full possession of the premises involved to the landlord.[5] § 749(1) RPAPL. Further, if the determination after hearing is for the landlord, the issuance of a warrant cannot be stayed for more than five days therefrom; if the judgment is rendered upon the tenant's default, the court may stay the issuance of the warrant for a period not exceeding ten days from the date of service. § 732(2) (3) RPAPL.

\* \* \*

The focus of plaintiffs' attack is aimed at § 735 RPAPL, which establishes the requisite manner of service upon the tenant of the notice of petition and petition. § 735 provides in pertinent part:

> Service of the notice of petition and petition shall be made by personally delivering them to the respondent; or by delivering to and leaving personally with a person of suitable age and discretion who resides or is employed at the property sought to be recovered, a copy of the notice of petition and petition, if upon reasonable application admittance can be obtained and such person found who will receive it; or if admittance cannot be obtained and such person found, by affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered; and in addition,

within one day after such delivering to such suitable person or such affixing, by mailing to the respondent.

Plaintiffs assert that this notice provision suffers from a variety of constitutional defects. They attempt to support this by allegations in essence as follows.

Plaintiff De Sapio instructed the building superintendent to apply the deposit of two months' security (paid when she leased the apartment) to payment of the last two months rent under her lease. On January 29, 1970, Mrs. De Sapio learned for the first time that her instruction had not been heeded; on that day she was served with a warrant of eviction. Plaintiffs allege that process server Leo Georgio in fact never served Mrs. De Sapio with the requisite notice of petition and petition; that a default judgment was entered of record without an opportunity afforded her to appear, be heard, explain or satisfy the rent due.

Repossession of the apartment occupied by plaintiff Ramirez occurred in a similar fashion. Miss Ramirez had intentionally withheld payment of one month's rent in order to prevail upon her landlord to repair a window broken when burglars entered her apartment. Process server Louis Karp, plaintiffs allege, never effected service of the notice of petition and petition upon Miss Ramirez (they furnish an impressive recital in support thereof). As with Mrs. De Sapio, the first notice she received of the summary dispossess proceeding was the warrant of eviction.

Plaintiff Shepard, on April 18, 1970 received a petition of eviction in the mail informing him to appear in court on April 20, 1970. Shepard's mailing on May 11, 1970 of the rent due proved futile, for less than one month after commencement of proceedings he and his family were evicted.

In the case of the fourth plaintiff, Mr. Velazquez, suit was commenced June 10,

---

and requires a copy of the notice of petition be filed with the clerk.

5. § 749(2): The officer to whom the warrant is directed and delivered shall give

at least seventy-two hours notice, in writing \* \* \* to the person or persons to be evicted \* \* \*.

1970 to recover $115.24, $107.26 of which represented the unpaid June rent. His rent allowance by the Department of Welfare prior to June totaled only $92.-40. He applied that sum ($92.40) on June 16, 1970 to the rent due, and on July 1, 1970 paid $145.18 more upon receipt of an additional appropriation for increased rent from Welfare On July 8, 1970, plaintiff Velazquez and his family were evicted.

On the basis of these and numerous other evictions (alleged in general terms) entered upon the default of tenants complaining of no prior notice of the summary proceeding, plaintiffs commenced this action seeking at this time, pursuant to Rule 65, F.R.Civ.P., a preliminary injunction enjoining defendant Silberzweig from excluding plaintiff Velazquez from the apartment the Velazquez family previously occupied and re-renting these premises to any other persons; and enjoining Hon. Edward Thompson, Administrative Judge of the Civil Court of the City of New York, from permitting the entry of summary default judgments for possession in that court unless process is served with due diligence and an inquest taken as to such service, and unless a prima facie case on the merits of the petition is established; further, notice of any resulting summary default judgment must be served upon the defendant who is then to be provided a reasonable time to satisfy such judgment. In addition, the parties argued and briefed application by plaintiffs for the convening of a 3-Judge court, and an order determining that this suit may be maintained as a class action pursuant to Rule 23, F.R.Civ.P.

### Substantiality of the Constitutional Question

■ The determinative issue in this motion is plaintiffs' request for the convocation of a 3-Judge court, 28 U.S.C. § 2284, to consider the constitutionality of the New York summary repossession proceeding for nonpayment of rent. If the complaint fails to raise a substantial constitutional question, plaintiffs' application for a 3-Judge panel must be denied. Additionally, one of the prerequisites for this Court's granting a preliminary injunction, a clear showing of probable success on the merits, Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir. 1969); Clairol Inc. v. Gillette Co., 389 F.2d 264 (2d Cir. 1968), would likewise not be satisfied. For the reasons set forth below, we find plaintiffs have failed to present a substantial constitutional issue. We reach this disposition in light of our Circuit's pronouncement in Heaney v. Allen, 425 F.2d 869 (2d Cir. 1970) rejecting the view "that except 'in an open and shut case,' it is better to 'constitute a 3-Judge court, and allow that court to determine initially' whether it should have been constituted," and holding that:

> An occasional reversal because a court of appeals will disagree with repect to the substantiality of the question is far less wasteful of judicial resources. * * * the best course for this circuit is for single district judges to continue concientiously to pass upon the substantiality of constitutional attacks on state statutes * * * and, where this court unanimously agrees that the attack is without merit, for us not to be finical on whether the lack of merit was obvious. 425 F.2d at 872.

### Fourth Amendment

Plaintiffs contend that the procedure for summary proceedings "wherein service of process is highly doubtful, time to respond is minimal, no proof is taken upon default, no judgment is served, little opportunity to satisfy is given, no knowledge of the time to satisfy is communicated, and tenants are often poor and undereducated * * *." Plaintiffs' Memorandum, August 4, 1970, pp. 12–13, constitutes an unreasonable search and seizure.

■ We cannot find that "entry" into the home of a tenant by the City Marshal pursuant to a court ordered warrant of eviction is equivalent to the type of conduct sought to be proscribed by the Fourth Amendment. Plaintiffs' claim is

not cognizable within this provision—where is the unreasonable search, where the illegal seizure? [6]

■ Further, if this Amendment is applicable, its aim is directed against unjustified interference with the tenant's continued possession of home and property, a right forfeited by nonpayment of rent due. A procedure to evict a nonpaying tenant, if found to satisfy the due process requirement, cannot fairly be labeled an unreasonable intrusion. The more relevant issue is whether this New York procedure violates the guarantees of the Fourteenth Amendment.

## Due Process

### A The claim of inadequate notice

The core of plaintiffs' complaint is that the procedure for notifying the nonpaying tenant of the landlord's commencement of the summary proceeding is constitutionally defective. Because this section does not provide for the mandatory exhaustion of more secure methods of service before less certain approaches are relied on, or require a due and diligent attempt at personal service before turning to alternative means, in the vast majority of landlord-tenant proceedings the conspicuous method of service is employed—affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered and mailing another copy thereof to the tenant within one day after "nailing."

Plaintiffs assert that the failure of De Sapio and Ramirez to receive notice of the summary proceeding is not atypical. Rather, exhaustive studies (conducted by the Core Legal Department and the Legal Unit of Mobilization for Youth) inescapably lead to the conclusion that a strikingly large percentage of default judgments in the City Civil Court are entered after reputed "serv-

ice" based on "factual" recitals highly improbable if not altogether impossible. In short, plaintiffs assert that the acceptable method of conspicuous service and the fraudulent practices allegedly resorted to by process servers ("sewer service"), combined with the short period of time provided for the tenant to respond, amounts to a taking of property without a meaningful opportunity to be heard in opposition.

■ While we denounce any abuse of legal process and deplore the dire consequences that ensue, we cannot find that the method of service provided for by § 735 is violative of due process. The Fourteenth Amendment standard upon which a notice provision is judged was set forth in Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950):

> notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied. [citations omitted] 339 U.S. at 314–315, 70 S.Ct. at 657, 94 L.Ed. 865.

Due process does not require a state to adopt the optimum method of service; that a minimum standard be satisfied. The procedure under review (affixing to the door and mailing) is reasonably calculated to inform the tenant of the repossession action.[7] "Where the names and post office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means

---

6. Plaintiffs have failed to cite a single case which expands the concept of search and seizure to include the present complaint.

7. § 735 appears to require an attempt to serve a person at the place of residence

before recourse to the conspicuous method. Even assuming the two methods are simply alternatives, the procedure would satisfy due process.

less likely than the mails to apprise them [interested parties] of its pendency." 339 U.S. at 318, 70 S.Ct. at 659. Schroeder v. New York, 371 U.S. 208, 212–213, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962).

Plaintiffs' suggested alternatives of imposing requirements of due diligence or registered-certified mail are preferable but cannot be mandated by this federal court. The true evil is not the state statutory procedure but its alleged flagrant abuse by the pernicious process server. The appropriate remedies are vacating the default judgment[8] in accordance with state procedure and the tightening of court administration over the process server "industry." While belated, the shortcoming grafted onto the judicial proceeding by the allegedly mendacious process server has begun to be remedied by recently enacted licensing requirements (New York Law Journal, August 19, 1970, p. 1), criminal prosecution by federal and state authorities (United States v. Barr, D.C., 295 F.Supp. 889; United States v. Wiseman, 68 Crim. 94) and enlightened Civil Court judges (Central Budget Corp. v. Krox, 307 N.Y.S.2d 936 (Civil Ct.1969)).

### B  Failure to hold inquest, etc.

■ Plaintiffs assert that the absence of statutory procedures requiring the Civil Court to hold an inquest to verify the reputed service of process, or determine whether the petitioning landlord has established a prima facie case, contravenes the Fourteenth Amendment. In support of this contention plaintiff insists that "in the face of widespread knowledge of the likelihood of fraudulent service, the Civil Court equally violated the plaintiffs' civil rights by neglecting even to inquire into the truth of

the process servers affidavits." Plaintiffs Memorandum, p. 36. However, unlike the factual background of Corey v. Town of Somers, 351 U.S. 141, 76 S.Ct. 724, 100 L.Ed. 1021 (1956) relied upon by plaintiffs, the Civil Court cannot be charged with knowledge[9] of noncompliance in any particular case with the valid statutory notice scheme. Additionally, as previously noted, procedures are available to rectify any defective judgment. Plaintiffs have failed to point to any case which would support a finding that included within due process is the right to have a court inquire beyond the face of an affidavit of service.

■ Further, a court, upon default is not required by the Fourteenth Amendment to consider the merits of the petitioner's claim where, as here, the petition is verified and must include "the facts upon which the special proceeding is based." § 741 RPAPL. The cases relied upon by plaintiffs to support their contention that a judicial decision must be bottomed upon evidentiary facts are inapposite. In Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654 (1960), and Schware v. Board of Bar Examiners, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), the court considered the sufficiency of evidence presented in the course of a formal hearing to sustain a court opinion. Here, the warrant of eviction is based upon the petition and the failure of the non-paying tenant to appear. Neither the state policy which considers as undesirable the awarding of a divorce by default (New York Domestic Relations Law § 211), nor the necessity for taking evidence after failure to appear by a party in an action to recover a money judgment for

---

8. Plaintiffs argue that Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969) lends support to the proposition that "the right to regain property taken through unconstitutional means is insufficient to correct the defect." We cannot read *Sniadach*, which involved no statutory procedures for notice prior to a pre-judgment attachment, as extending to the facts herein.

9. In *Covey*, the court found that "although she was known by the officials and citizens of the Town * * * to be a person without mental capacity to handle her affairs or to understand the meaning of any notice served upon her" no effort was made to appoint a committee for her until after entry of default judgment.

a sum not certain (New York C.P.L.R. § 3215(b)), is applicable here.

## C Reasonable opportunity to satisfy judgment

■ Plaintiffs' final due process attack is aimed at the failure of the RPAPL to provide for either notice of entry of the default judgment or an opportunity by the tenant to satisfy the judgment before the issuance of a warrant of eviction.[10] Further, § 751 RPAPL provides that the tenant may avoid the consequences of a summary proceeding by depositing the amount of rent then due together with court costs with the clerk of the court "at any time before a warrant is issued." Plaintiffs' position is that where the tenant's first notice is receipt of the warrant of eviction, he is denied the opportunity to exercise this right; that the basic provisions of § 735 are defective. However, in light of our disposition herein as to the constitutionality of the initial notice procedure, we cannot find that due process requires the state to provide for additional notice to the defaulting tenant. Cases relied upon by plaintiff, *Sniadach, supra,* and Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957), involved state statutes the operation of which adversely affected the individual without requiring any prior notification.[11]

### Equal Protection

■ The adoption of § 732 RPAPL by the Appellate Division of the New York Supreme Court, First and Second Departments, in effect reduces the period of time within which a tenant in New York City must interpose an answer to the petition and imposes a limit on the length of a stay that the City Civil Court may order before issuance of a warrant of eviction. Plaintiffs assert that the application of this section only to dwellers within the City denies this group the protection afforded residents elsewhere in the State.

This statutory classification, however, is not (as contended) bottomed on the residence of the tenant. Rather, the provision of potential state wide application authorizes the respective Appellate Division to determine whether the abbreviated procedure is to be implemented in the lower courts within their administrative jurisdiction. Under examination is not the fundamental right to shelter, but the method by which a tenant who has defaulted in the payment of rent may be evicted. The adoption by the Appellate Divisions of the expedited procedure governing the New York City area reflects the critical housing shortage—most acute within this city. Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970).

### Ninth Amendment

■ As to the claim of denial of due process: We cannot find that this New York eviction procedure, which satisfies the Fourteenth Amendment, invades any "right of housing" within the ambit of the Ninth Amendment.

### Conclusion

Accordingly, we deny plaintiffs' application for the convening of a 3-Judge Court and dismiss the constitutional claims directed against defendants Thompson, Abrahms, Moritt, and Feely; we deny plaintiffs' request for the issuance of a preliminary injunction and deny plaintiffs' application for an order determining this action as a class suit.

So ordered.

---

10. Although § 732 provides for a short stay of the warrant if ordered by the court, plaintiffs assert that this provision is rarely used.

11. Likewise Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1945) is inapplicable. There, the lapse of time from the initial judgment and the possibility of modification, of the alimony award required a "second" notice.