**George VELAZQUEZ et al., Appellants,**

v.

**Edward THOMPSON, as Administrative Judge of the Civil Court of the City of New York, et al., Appellees.**

**No. 38, Docket 35556.**

United States Court of Appeals, Second Circuit.

Argued Sept. 22, 1971.

Decided Nov. 3, 1971.

---

Morton P. Cohen, Brooklyn, N. Y., Cornelia McDougald, New York City (Harold J. Pokel, Gertrude Schwartz, Oscar G. Chase, Jane P. Stern, Brooklyn, N. Y., of counsel), for appellants.

Steven M. Hochberg, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen., State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for appellees.

Before FRIENDLY, Chief Judge, MULLIGAN and TIMBERS, Circuit Judges.

MULLIGAN, Circuit Judge:

This is an appeal from an order of the United States District Court for the Southern District of New York, Irving Ben Cooper, J., denying the plaintiffs' application for the convening of a three judge court pursuant to 28 U.S.C. § 2281 and § 2284; dismissing constitutional claims against defendants Thompson, Abrams, Moritt and Feeley; denying plaintiffs' request for issuance of a preliminary injunction and application for an order determining this action as a class suit. Plaintiffs claimed federal jurisdiction under 28 U.S.C. §§ 1343(3), 2201 and 2202. They sought damages, injunctive and declaratory relief to redress the alleged deprivation of rights secured by the fourth, ninth and fourteenth amendments of the Constitution of the United States. 42 U.S.C. § 1983. We affirm.

The plaintiffs in this case are all New York City apartment dwellers who were summarily evicted pursuant to article 7

of the New York Real Property Actions and Proceedings Law, McKinney's Consol.Laws, c. 81 for non-payment of rent. The defendants Thompson, Abrams, Moritt and Feeley are judges of the Civil Court of the City of New York against whom injunctive relief is sought preventing the prospective entry of summary default judgments and the issuing of warrants of eviction except under specified conditions. The defendant, Herbert Klein, is Marshal of the City of New York and Georgio and Karp are process servers. The remaining defendants are the plaintiffs' former landlords and their employees.

We believe that there was no showing that the summary procedures transgressed constitutional guaranties and therefore the claim for damages, declaratory and injunctive relief were properly dismissed and the request for a three-judge court was properly denied.

Since there was no substantial constitutional question involved, the convening of a three judge court was not appropriate. Heaney v. Allen, 425 F.2d 869, 872 (2d Cir. 1970). In that case we explicitly declined the invitation to follow the so-called "open and shut" test adopted by the Fifth Circuit in Jackson v. Choate, 404 F.2d 910 (5th Cir. 1968) which is here relied upon by appellants. We see no reason to depart from the rule of this circuit, (see Johnson v. New York State Education Department, 449 F.2d 871 (2d Cir. 1971)), even though this case does present "open and shut" aspects.

■ Summary proceedings for the recovery of real property were first authorized in New York in 1820 ([1820] N.Y.Laws ch. 194) and have since been continued as a speedy and effective means for the recovery of realty. Reich v. Cochran, 201 N.Y. 450, 453–454, 94 N.E. 1080, 1081 (1911). Their present place in the Real Property Actions and Proceedings Law was the result of a New York Law Revision Commission study (1962 N.Y.Legis.Doc. No. 65(G)) which recommended simplification and

modernization. The essential substantive and procedural provisions were carried over from article 83 of the former Civil Practice Act. Shaw, Summary Proceedings under the Real Property Actions and Proceedings Law, 49½ McKinney's N.Y.Consolidated Laws, pp. 101, 103–104 (1963). Summary eviction procedures exist in virtually every state (52A C.J.S. Landlord and Tenant § 752 (1968)) and their primary purpose is to enable landlords to regain possession quickly and inexpensively and thereby avoid the plenary action for ejectment and its incident delays which had prompted landlords to short circuit the judicial process by resort to "self-help." Reich v. Cochran, *supra*; Tri-State Refreshments, Inc. v. Nitke, 41 Misc.2d 386, 246 N.Y.S.2d 79 (Broome County Ct.1964).

The plaintiffs have here mounted a broadside constitutional attack on article 7 Real Property Actions and Proceedings Law; however, upon analysis, the principal target is § 735 which provides for the manner of service of process in such actions. They contend that this section is violative of the due process guaranties of the fourteenth amendment both on its face and as it has been applied to them. The precise circumstances of the eviction of the tenants has been set forth in Judge Cooper's opinion below, 321 F. Supp. 34 (S.D.N.Y.1970). They are not in dispute and there is no need to repeat them here. It is urged that the statutory scheme is, in any event, frustrated by vicious process servers who file fraudulent affidavits of service. "Sewer service" is an ignominious practice which is not limited to summary proceedings for the eviction of tenants but is also employed in suits on installment payment contracts for personal property permitting repossession and garnishment, providing a fertile field for the fleecing of the poor and the disadvantaged. (See United States v. Brand Jewelers, Inc., 318 F.Supp. 1293 (S.D.N.Y.1970).) We believe that the statute (§ 735) clearly complies with due process requirements

and that its recent amendment, as will be developed *infra*, substantially minimizes the opportunity for "sewer service."

■ Under Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) the test of the adequacy of notice for due process purposes is whether it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Since the notice must fit the circumstances, it is "impossible to draw a standard set of specifications as to what is constitutionally adequate notice, to be mechanically applied in every situation." Schroeder v. City of New York, 371 U.S. 208, 212, 83 S.Ct. 279, 282, 9 L.Ed.2d 255 (1962). New York has drawn a separate service of process section for this special proceeding which is particularly designed and intended to bring notice home to the tenant. Service of the petition and notice of petition on a natural person (the plaintiffs in this action) is accomplished in one of three ways: a) personal delivery to the respondent (personal); or b) delivery to and personally leaving a copy with a person of suitable age and discretion who resides or is employed at the property sought to be recovered, if upon reasonable application admittance can be obtained and such person found (substituted); or c) if substituted service cannot be accomplished, by affixing a copy upon a conspicuous part of the property sought to be recovered (conspicuous). If either the substituted or conspicuous methods of service are used, a copy of the notice of petition and petition must be mailed to the respondent (by certified or registered mail) within one day after the delivery or affixing. (§ 735 ([1971] N.Y. Laws ch. 83).)

■ It is to be noted initially that since this is an action to recover the possession of premises occupied by a person who is resisting removal, his whereabouts are obviously fixed and easily determinable. Thus the usual problem of serving a person whose present residence is unknown, which gives rise to much of the constitutional litigation in this area (see, *e. g.*, Dobkin v. Chapman, 21 N.Y.2d 490, 289 N.Y.S.2d 161, 236 N.E.2d 451 (1968)), is absent. Moreover, this statute specifies that the substituted or conspicuous service be made at the premises sought to be recovered. Appellants' first attack on the statute (§ 735) is that it is constitutionally deficient since it does not require that a diligent effort be first made to accomplish personal service before permitting substituted or conspicuous service. This is simply frivolous. The general service of process statute in New York C.P.L.R., § 308, which had required diligent effort to accomplish personal service, was amended in 1970 ([1970] N.Y.Laws ch. 852) to eliminate the need for priority of personal service on the recommendation of the Judicial Conference of the State of New York precisely because that requirement was considered to be "the single most important cause of sewer service." (McLaughlin, 1970 Supp. Practice Commentary to N.Y.C.P. L.R. § 308 pocket part (McKinney Supp. 1970).) The reluctance of process servers to find the person led to the fraudulent affidavit. Appellants' suggestion that this discredited priority device be now engrafted on § 735 and that the section is constitutionally infirm without it, is not only without any substance but it would exacerbate and not ameliorate a deplorable situation.

It should also be noted that the section does not permit "conspicuous" service until "substituted" service is first attempted. This is a priority also required by C.P.L.R. § 308 ([1971] N.Y.Laws ch. 176). Its absence before 1970 was the basis for criticism (see McLaughlin, Practice Commentary to N.Y.C.P.L.R. § 308, at pp. 474–475 (McKinney 1963)).

Both substituted and conspicuous service are incomplete unless within one day thereafter, the petition and notice of pe-

tition are mailed to the respondent. In the case below plaintiffs urged that this statutory safeguard was rendered ineffective by reason of perjurious affidavits of mailing. They suggested that there be a registered or certified mailing amendment. (321 F.Supp. at 40). This point has evanesced, since the New York Legislature has amended § 735 ([1971] N.Y.Laws ch. 83) to require mailing to the respondent "by registered or certified mail." Prior to the amendment it was the word of the process server against the word of the respondent and as Judge Weinfeld has pointed out: "No matter how truthful his denial of service may be, his version may not be accepted by the trier of the fact." United States v. Barr, 295 F.Supp. 889, 892 (S.D.N.Y.1969) (footnote omitted). Since this amendment only became effective on September 1, 1971, it is too soon to gauge its effectiveness. However, it is patently designed to minimize "sewer service." If the mailing is questioned and the server is unable to produce postal return receipts it will no longer be a question of whom to believe.

Thus we hold that § 735 as amended in 1971 is carefully drafted and calculated to apprise tenants of the pendency of the action and is not vulnerable to constitutional attack. Having made every effort to insure that tenants receive ample notice so as to prevent unintentional defaults, appellants' objection to the post-service procedures of article 7, are much less meritorious than they were when Judge Cooper found them to be insubstantial.

We have carefully examined the arguments of the appellants directed to the constitutionality of article 7 under the fourth and ninth amendments of the constitution and the "equal protection" clause of the fourteenth amendment and find them to be without merit.

Affirmed.