## CIRCUIT COURT OF ARLINGTON COUNTY

Arena Evans

v.

Thomas J. Offutt, etc. et al.

By JUDGE CHARLES H. DUFF

January 10, 1978

Case No. (Chancery) 27628

Complainant has filed a Bill in Chancery seeking damages, both compensatory and punitive, for an alleged unlawful eviction from leased premises and also seeking an injunction to prohibit such conduct by the landlord in the future against other tenants. The Defendants' Demurrer to the Bill asserts four grounds, in short paraphrase as follows:

1. The Defendants' actions were not unlawful.

2. Complainant's request for an injunction is moot as she is no longer a tenant of the Defendants.

3. Complainant's prayer for an injunction as to other tenants is untenable as she is not a member of the class she is seeking to protect by the injunction.

4. Punitive damages and damages for emotional distress are not recoverable.

With respect to the first ground of the Demurrer, the able briefs submitted appear to proceed on the assumption that the landlord-defendants employed "self help" and summarily evicted the Complainant allegedly for default in the payment of rent. Complainant contends that the Virginia Residential Landlord-Tenant Act, Section 55-248.2, *et seq.*, has superseded any common law right of self help which might have theretofore been available to the

landlord. She points to the language of various sections of that statute which she asserts both expressly and by necessary implication support her contention.

The Defendants, on the other hand, deny this interpretation; deny that anywhere in the statute is there language sufficiently express in its terms to supersede the long-established common law. Defendants also refer to the possible applicability of § 55-79 which provides for re-entry by a landlord in the case of a deed of lease containing certain specific language provided in the statute.

A demurrer admits all material allegations of fact well pleaded. It does not admit pure conclusions or matters of evidence pleaded which are not necessary to the ultimate decision. The Complainant's action and her relationship to the Defendants are grounded upon a lease of the premises; however, the lease was not attached as an exhibit to the Bill and its provisions are not before the Court. The applicability of § 55-79 may well depend to a material degree on the language of the lease. The allegation that the landlord's actions were unlawful may also depend to some degree on the lease. I am of the opinion that the ultimate question on the existence or non-existence of a possessory remedy by the landlord should not be reached by Demurrer where the action proceeds on a lease not before the Court. Whether summary judgment upon a stipulation as to the lease might lie is a matter for counsel's consideration. For the reason indicated, and reserving any opinion as to whether legislation has superseded the alleged common law right of self help, the Demurrer is overruled as to the first ground.

The grounds of the Demurrer relating to the request for injunctive relief present for decision the issue of whether the allegations of the Bill are sufficient to support the issuance of an injunction restraining possible future eviction of other tenants. As I view the law, the Court is not required to decide whether Complainant's request for an injunction is "moot" or whether she has standing to bring an injunction action on behalf of other tenants. Even if these questions were answered in the affirmative, the allegations of the Bill are not sufficient to invoke the jurisdiction of equity.

The function of a prohibitory injunction is to maintain the status quo, to restrain the continued commission of an on-going wrong, or to prevent the future

commission of an anticipated wrong. As was stated in a somewhat analogous case, *WTAR Radio-TV Corp.* v. *Virginia Beach*, 216 Va. 892 (1976):

> Whether an injunction, an extraordinary remedy, should be employed to prevent the future commission of an anticipated wrong depends, in each case, upon the nature of the wrong and upon the likelihood that the wrong will be committed. When there is reasonable cause to believe that the wrong is one that would cause irreparable injury and the wrong is *actually threatened* or apprehended with *reasonable probability*, there is good cause for a prohibitory injunction. (italics mine)

With respect to the allegations of the Bill, an actual threat of a future eviction has not been alleged. The remaining question is whether from the facts alleged such an eviction can be apprehended with reasonable probability.

Paragraph 9 of the Bill of Complaint alleges that other tenants of the Birchwood Apartments "may be unlawfully ousted from their apartments by the Defendants." This language poses the possibility of the action asserted therein. There is no allegation of facts from which it could be concluded that such conduct was reasonably probable, that is, was more likely to occur than not.

As was stated in the *WTAR* decision, a previous course of conduct may raise an inference that such conduct will be repeated. But mere inference does not support an apprehension with reasonable probability. The law never presumes that a man will violate the law. Rather, the ancient presumption is that every man will obey the law. I am of the opinion that a mere allegation that something may happen in the future is not sufficient to support the request for injunctive relief. Accordingly, the Demurrer will be sustained as to grounds 2 and 3.

Finally, with respect to the allegations regarding damages, the validity of the claim for emotional distress is dependent upon the evidence and should not be reached by Demurrer. The claim, however, for punitive damages is defective. I am of the opinion that the term "actual damages" contained in § 55-248.26 refers to those damages necessary to compensate a tenant for his actual losses.

Punitive damages do not fall into this category. They are given by way of punishment to deter similar action from others. Furthermore, it does not seem to me that under the law in this Commonwealth punitive damages would be available in a Chancery action. While there appears to be a division of authority on the question, the majority of the cases in the United States have arrived at the conclusion that the award of punitive damages is "incompatible with equitable principles." See 48 A.L.R.2d 947 and *National Union Electric Corporation* v. *Wilson*, 434 F.2d 986 (6th Cir. 1970). Also, it is noted that in the early decision of *Ewing* v. *Litchfield*, 91 Va. 575 (1895), the Court stated that equity will not undertake to give damages save as ancillary or auxiliary to some one of its recognized subjects of jurisdiction and then only such damages are awarded as may be necessary to do full and complete justice by way of compensation. Accordingly, the ground of Demurrer relating to punitive damages will be treated as a Motion to Strike that aspect of Complainant's action and as such will be granted.

With the injunction request denied for the reasons indicated, the remaining relief sought can, if meritorious, be fully met by an award for damages. Accordingly, it occurs to me that equity has no further jurisdiction of the case and under familiar procedure it should be transferred to the Law side of the Court. If counsel will confer regarding the preparation of an appropriate Order denying the Demurrer as to Ground 1, sustaining Grounds 2 and 3, striking the claim for punitive damages and directing the Clerk to transfer the case to the Law side of the docket, with the preservation of exceptions to all parties as desired, it will be promptly entered.

· July 5, 1978

Case No. (Law) 19871

This litigation was commenced by Plaintiff Arena Evans filing a Bill in Chancery against the Defendants in which she sought injunctive relief and damages grounded upon an alleged illegal eviction or dispossession from an apartment which she had rented with another co-tenant from the Defendants. A Demurrer was filed to the Bill and was fully argued and ably briefed by all parties. By Order entered January 17, 1978, the Court, *inter alia*,

sustained the Demurrer as to the claim for injunctive relief, transferred the remaining aspects of the case to the Law side of the Court, and granted the Plaintiff leave to file a Motion for Judgment seeking relief by way of damages.

Subsequently, and within the time limitations prescribed in the aforesaid Order, a Motion for Judgment was filed in the names of the original Plaintiff, Arena Evans, and also her infant son, Jamere, who occupied the apartment with her, seeking damages for the alleged unlawful dispossession. Answers were filed by the Defendants and the cause is now before the Court for consideration of the Plaintiffs' Motion for Partial Summary Judgment as to liability and the Defendants' Motion to Dismiss, alleging that as a matter of law they have no liability to the Plaintiffs. These motions have been fully argued and the parties are in agreement that as to the issue of liability a pure question of law is presented, there being no material facts genuinely in dispute.

Without an exhaustive recital of the facts, the pleadings, responses to requests for admission and the able briefs filed show *inter alia*: that Plaintiff Arena Evans was a tenant of the Defendants under a written lease of an apartment owned and/or operated by them. Nothing in the lease is pertinent to the issues drawn by the motions. On April 4, 1977, the Defendants evicted the Plaintiffs from the apartment by changing the locks on the door without prior notice or process of Court. This action was taken because the cotenant of Arena Evans had not paid her portion of the rent then due, presumably for the month of April, 1977. On these facts the sole question presented by both motions is whether the law prohibited the Defendants from evicting the Plaintiffs without prior notice or process of Court, solely as a result of the nonpayment of rent.

Plaintiffs contend that the Virginia Residential Landlord Tenant Act, Section 55-248.2, *et seq.*, enacted in 1974, has superseded any common law right of "self help" which theretofore existed. They point to the language of various sections of the Statute which they assert both expressly and by necessary implication support their contention. They allege further that an amendment to Sec. 55-248.36 of the Act, passed by the General Assembly in its 1978 session (after this litigation arose), prohibiting a landlord from recovering or taking possession

of the dwelling unit without a Court order for possession, clarified the legislative intent of the original Act and supports their position that self help was abolished thereby.

Defendants, on the other hand, deny this interpretation of either the original Act or the amendment and further deny that anywhere in the Statute is there language sufficiently express in its terminology to supersede the common law right of self help. A careful examination of the authorities cited leads me to the conclusion that the Plaintiffs' Motion for Partial Summary Judgment as to liability must be granted and the Defendants' Motion to Dismiss must be denied.

### Virginia Residential Landlord Tenant Act

This Act was passed by the Legislature in its 1974 session. The purpose of enacting the Statute is stated in Sec. 55-248.3 as follows:

> The purposes of this chapter are to simplify, clarify, modernize and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants; to encourage landlords and tenants to maintain and improve the quality of housing; and to establish a single body of law relating to landlord and tenant relations throughout the Commonwealth; provided, however, that nothing in this chapter shall prohibit a county, city or town from establishing a commission, reconciliatory in nature only, or designating an existing agency, which upon mutual agreement of the parties may mediate conflicts which may arise out of the application of this chapter, nor shall anything herein be deemed to prohibit an ordinance designed to effect compliance with local property maintenance codes. This chapter shall supersede all other local, county or municipal ordinances or regulations concerning landlord and tenant relations and the leasing of residential property.

According the language used its common sense, everyday meaning, this Section clearly shows the legislative intent

to be to simplify, clarify, modernize and revise landlord and tenant law. It was also the General Assembly's purpose to establish a single body of law relating to landlord and tenant relations. A consideration of several sections of the Act appears apropos to the issue of whether a landlord may oust a tenant by self help for nonpayment of rent.

Sec. 55-248.18 provides specific instances where the tenant shall not unreasonably withhold consent to the landlord to enter the dwelling unit. No consent is required in the case of emergency. The Section, after so providing, expressly states:

> The landlord has no other right to access except by Court order or that permitted by 55-248.31 and 55-248.32.

Sec. 55-248.31 (nonpayment of rent) provides as follows:

> If rent is unpaid when due and the tenant fails to pay rent within five days after written notice by the landlord of nonpayment and his intention to terminate the rental agreement if the rent is not paid within that period of time, the landlord may terminate the rental agreement and proceed to obtain possession of the premises as provided in 55-248.35 of this chapter.

The landlord's authorization to "proceed" under 55-248.35 should be examined. That statute provides:

> If the rental agreement is terminated, the landlord may have a claim for possession and for rent and a separate claim for actual damages for breach of the rental agreement and reasonable attorney's fees as provided in 55-248.31, which claims may be enforced, without limitation, by the institution of an action for unlawful entry or detainer.

While nowhere in these sections does the statutory language expressly eliminate whatever right of self help existed at common law, a fair reading thereof seems to

me to necessitate the conclusion that the Legislature intended to carefully provide for the respective rights of the landlord and the tenant. In the event that the rental agreement was breached by nonpayment of rent the landlord had a clear right to recover not only possession of the premises but the rent due, and furthermore a claim for actual damages sustained by virtue of the breach of the agreement. By clear implication self help was not to be an available remedy. The legal remedies are broad and embrace every claim which the landlord might have by virtue of the tenant's default.

Indeed, in the note, *The Uniform Residential Landlord and Tenant Act*, 15 *Wm. & Mary L. Rev.* 845, 890 (1974), the writer observed:

> The URLTA limits the available remedies for regaining possession and would appear to rule out self help in removing a tenant.

*Amendment to Sec. 55-248.36*

During the 1978 Virginia General Assembly, Sec. 55-248.36 was amended and re-enacted as follows:

> A landlord may not recover or take possession of the dwelling unit (i) by willful diminution of services to the tenant by interrupting or causing the interruption of electric, gas, water or other essential service required by the rental agreement or (ii) by refusal to permit the tenant access to the unit unless such refusal is pursuant to a Court Order for possession.

Plaintiffs assert in their brief, and Defendants do not challenge the assertion, that this legislation was introduced by the Honorable James Almand, Delegate from Arlington County, shortly after the present litigation was brought to his attention by the Arlington County Tenant Landlord Commission. Plaintiffs contend that the purpose of the Amendment was to clarify the law and that under the rationale of *Boyd* v. *Commonwealth*, 216 Va. 16 (1975), the Amendment should be regarded as an authoritative interpretation by the Legislature of the original VRLTA. Defendants state that the passage of the Amendment

indicates that prior to its passage the landlord could evict by self help or, phrased differently, that the Amendment shows that it was the intent of the Legislature to change the law as it theretofore existed. See *Richmond v. Sutherland*, 114 Va. 688 (1913).

I have carefully examined both the *Boyd* and *Sutherland* decisions and am of the belief that *Boyd* is more nearly apropos to the issue before the Court.

In *Boyd* the General Assembly undertook to legislate on a broad basis for the protection of the people of the Commonwealth from natural and state disasters. An Amendment to the original legislation specifically added a "resources shortage" as one of the "disasters" included in the original Act. No express mention was made of such a shortage in the definition of "disaster" in the original Act. It is noted that the Amendment was added soon after the controversy arose. The Court held as follows:

> Accordingly, we hold that the amendments to the act pertinent to this litigation were changes of form, which merely· interpreted the 1973 act and made it more detailed and specific. They were not changes of substance, which add rights to, or withdraw existing rights from an original act. . . . When amendments are enacted soon after controversies arise "as to the interpretation of the original act, it is logical to regard the amendment as a legislative interpretation of the original act--a formal change--rebutting the presumption of a substantial change."

Similarly in the case at Bar a 1978 amendment was enacted promptly after the present controversy arose. Considering the stated purposes of the original Act and the language of the various sections heretofore cited, it is my opinion that the 1978 Amendment was not intended as a substantial change of the original Act but rather a legislative interpretation of the original Act, a clarification thereof, rebutting the presumption of substantial change.

In view of this holding, no opinion need be expressed on the validity of the Plaintiffs' contention that the self help eviction was illegal in that it violated their right not to be deprived of property without due process of law. I have examined the cases cited, including *Barber*

v. *Rader*, 350 F. Supp. 183 (S.D. Fla. 1972), and they indeed support the proposition for which cited.

For the above reasons the Motion for Partial Summary Judgment will be granted and the Motion to Dismiss will be denied. Upon proper notice the case will be placed on the docket for trial as to the issue of damages solely.