Kenneth ADAMS and Mary Jean Adams, Plaintiffs,

v.

JOSEPH F. SANSON INVESTMENT COMPANY et al., Defendants.

Civ. No. LV-2159 RDF.

United States District Court,
D. Nevada.

Jan. 21, 1974.

Clark County Legal Services, Las Vegas, Nev., for plaintiffs.

Dickerson, Miles & Pico, Las Vegas, Nev., for defendants.

## MEMORANDUM OPINION RE PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

ROGER D. FOLEY, Chief Judge.

### FACTS

This is an action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202 for damages and for injunctive and declaratory relief. Plaintiffs seek to have this Court declare the landlord lien laws of Nevada (NRS §§ 108.510, 108.-520 and 108.530) unconstitutional insofar as they allow deprivation of property without due process of law as guaranteed by the Fourteenth Amendment. Jurisdiction is asserted under 28 U.S.C. §§ 1331 and 1343(3).

Plaintiffs, husband and wife, rented a house in North Las Vegas from defendant Joseph F. Sanson Investment Company in 1972. The rental was $155.00, due on the first of each month. These rentals were paid monthly until October 1, 1973. Plaintiff Kenneth Adams was discharged from his employment in August 1973, and he informed an agent of the lessor, defendant Jones, that he could not pay the rent on time since he did not have any money. On October 2, the landlord served plaintiffs with a Notice to Pay Rent or Surrender the Premises pursuant to the rental agreement and provisions of the Nevada unlawful detainer laws, in particular NRS 40.-253(1). Plaintiffs allege on page 5 of their complaint that:

" . . . On or about October 8, 1973, Plaintiff KENNETH ADAMS returned home after looking for work,

to find he was locked out of the residence . . . He also discovered that his automobiles, his furniture and other personal items were missing."

In defendants' Reply Memorandum in Opposition to Plaintiffs' Memorandum in Support of Motion for Preliminary Injunction, however, defendants state, at pages 3 and 4, that:

"When the Plaintiffs refused to pay the rent due, or file the affidavit (authorized by NRS 40.253(1), which would permit the lessee to contest the unlawful detainer notice upon filing within 5 days an affidavit with the justice of the peace that he is not in default in the payment of rent), the Landlord began eviction proceedings on October 11, 1973, pursuant to Nev. Rev.Stat. 40.240 et seq. . . . On October 12, 1973, the Constable changed the locks and took possession of the premises and enforced the statutory lien on Plaintiffs' property following the procedure outlined in the Rental Agreement, the Forcible Entry and Detainer Statute [NRS § 40.215 et seq.], and the Landlord Lien Act [NRS § 108.510 et seq.]."

Despite the inconsistency in dates thus created, plaintiffs do not contest the fact that the unlawful detainer action occurred prior to defendants' enforcement of their landlord lien. There is a disagreement, however, over what was seized by defendants pursuant to the lien. Counsel for plaintiffs stated at oral hearing that to the best of his knowledge, plaintiffs' automobiles, furniture, personal effects and household items were all seized. Defendants state that only furnishings, furniture and clothing were seized, that one of plaintiffs' autos was never seized, and that plaintiffs' second auto was only towed from the premises and is available to plaintiffs at any time they wish to claim it. It appears that what clothes were taken were released to plaintiffs by defendants after plaintiffs asserted the statutory exemption for clothing from the landlord lien laws.

## ISSUE

Do the instant plaintiffs have standing to assert the unconstitutionality of the Nevada Landlord Lien Act?

## DISCUSSION

Ultimately, a question of standing to sue, the underlying issue presented by this case is the sufficiency, under Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), and its progeny, of the preseizure notice and hearing accorded plaintiffs. This issue, in turn, requires an interpretation of a new body of law that has purposely left unsettled the precise scope of the notice and hearing required in prejudgment settings. As stated by the Supreme Court in Fuentes v. Shevin, 407 U.S. 67, 96–97, 92 S.Ct. 1983, 2002, 32 L.Ed.2d 556 (1972),

" . . . We do not question the power of a State to seize goods before a final judgment in order to protect the security interests of creditors so long as those creditors have tested their claim to the goods through the process of a fair prior hearing. The nature and form of such prior hearings, moreover, are legitimately open to many potential variations and are a subject, at this point, for legislation —not adjudication . . . " (footnote omitted).

Plaintiffs contest the constitutional validity of the Nevada Landlord Lien Act insofar as it allows for prejudgment seizure of tenant's property without notice or hearing. NRS § 108.510 et seq.[1]

---

1. The Nevada Landlord Lien Act (NRS §§ 108.510, 108.520 and 108.530 provide:

### LIENS OF LANDLORDS OF RENTAL HOUSING

108.510 Liens of keepers, landlords of apartment houses, other rental housing; sales at public auction.

1. Except as provided in subsection 2, keepers or landlords of furnished or unfurnished apartment houses, bungalow courts, houses, multiple dwelling units or commercial units shall have a lien upon the baggage and other property of value belonging to their tenants or guests, and upon all the

Statutorily approved lessors' security schemes similar to those here attacked have been almost uniformly declared unconstitutional as a denial of due process. See Barber v. Rader, 350 F.Supp. 183 (S.D.Fla.1972); Gross v. Fox, 349 F. Supp. 1164 (E.D.Pa.1972); MacQueen v. Lambert, 348 F.Supp. 1334 (M.D.Fla. 1972); Dielen v. Levine, 344 F.Supp. 823 (D.Neb.1972); Collins v. Viceroy Hotel Corp., 338 F.Supp. 390 (N.D.Ill. 1972); Holt v. Brown, 336 F.Supp. 2 (W.D.Ky.1971); Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970); Klim v. Jones, 315 F.Supp. 109 (N.D.Cal.1970); Musselman v. Spies, 343 F.Supp. 528 (M.D.Pa.1972). Defendants, in response, do not contend that the landlord lien laws of Nevada, taken alone, are constitutional; they do contend that because plaintiffs were given notice and opportunity for a hearing under Nevada's Forcible Entry and Detainer Statute (NRS §§ 40.215 et seq.) [2] prior to de-

right, title and interest of their tenants or guests in and to all property in the possession of such tenants or guests which may be in such rented property, for:

(a) The proper charges due from such tenants or guests for their accommodation, rent, services, meals and such extras as are furnished at their request; and

(b) All moneys expended for them at their request; and

(c) The costs of enforcing the lien;

with the right to the possession of such baggage and other property of value until the charges are paid, and the moneys are repaid.

2. The following items belonging to such tenant or guest are exempt from the provisions of this section:

(a) Tools and implements necessary to carry on a trade or employment.

(b) Work uniforms and personal clothing, but not furs, jewelry or other items of unusual value.

(c) All clothing of dependent children.

(d) All prescription medicines and drugs.

3. Unless the charges shall be paid and unless the moneys shall be repaid within 60 days from the time when the charges and moneys, respectively, become due, the keeper or landlord of the rented property described in subsection 1, may sell the baggage and property at public auction to the highest bidder, after giving notice of the sale as provided in NRS 108.520.

108.520 Notice of sale at public auction. Notice of the sale shall be given by:

1. Publication of a notice containing the name of the debtor, the amount due, a brief description of the property to be sold, and the time and place of such sale, once every week for 4 successive weeks prior to the date of sale in a newspaper of general circulation in the county in which the apartment house, bungalow court, house, multiple dwelling unit or commercial unit is situated; and

2. Mailing, at least 15 days prior to the date of the sale, a copy of the notice addressed to the tenant or guest at his post office address, if known, and if not known, the notice shall be addressed to the tenant or guest at the place where the apartment house, bungalow court, house, multiple dwelling unit or commercial unit is situated.

108.530 Disposition of proceeds of sale: sale bars action by tenant.

1. After satisfying the lien out of the proceeds of the sale, together with any reasonable costs that may have been incurred in enforcing the lien, the residue of the proceeds of sale, if any, shall, upon demand made within 6 months after the sale, be paid by the keeper or landlord of an apartment house, bungalow court, house, multiple dwelling unit or commercial unit to the tenant or guest.

2. If not demanded within 6 months from the date of the sale, the residue, if any, shall be paid into the treasury of the county in which the sale took place; and if the same be not claimed by the owner thereof, or his legal representative, within 1 year thereafter, it shall be paid into the general fund of the county.

3. The sale shall be a perpetual bar to any action against the keeper or landlord of an apartment house, bungalow court, house, multiple dwelling unit or commercial unit for the recovery of such baggage or property, or of the value thereof, or for any damages growing out of the failure of the tenant or guest to receive such baggage or property.

2. Nevada's Forcible Entry and Detainer Act provides, in pertinent part:

40.250 Unlawful detainer defined. A tenant of real property or a mobile home for a term less than life is guilty of an unlawful detainer:

\*     \*     \*     \*     \*

3. Possession after default in rent. When he continues in possession, in person or by subtenant, after default in the payment of any rent and after a notice in writing, requiring in the alternative the payment of the rent or the surrender of the detained premises, shall have remained uncomplied with for a period of 5 days after service thereof. Such notice may be served at any time after the rent becomes due.

\*     \*     \*     \*     \*

40.253 Premises, mobile home rented by month or shorter period: Supplemental remedies of summary eviction and exclusion of tenant; order of removal.

1. In addition to the remedy provided by subsection 3 of NRS 40.250 and by NRS 40.290 to 40.420, inclusive, when the tenant of a dwelling, apartment or mobile home with periodic rent reserved by the month or any shorter period, is in default in payment of such rent, the landlord or his agent, unless otherwise agreed in writing, may serve or have served a notice in writing, requiring in the alternative the payment of the rent or the surrender of the premises at or before noon of the fifth full day following the day of service. Such notice shall advise the tenant of his right to contest such notice by filing, within 5 days, an affidavit with the justice of the peace that he is not in default in the payment of such rent.

2. Upon noncompliance with such notice:

(a) The landlord or his agent may apply by affidavit to the justice of the peace of the township wherein the dwelling, apartment or mobile home is located. Such justice of the peace may thereupon issue an order directing the sheriff or constable of the county to remove the tenant within 24 hours after receipt of the order. The affidavit provided for in this paragraph shall contain:

(1) The date the tenancy commenced.

(2) The amount of periodic rent reserved.

(3) The amounts of any cleaning or rent deposits paid in advance, in excess of the first month's rent, by the tenant.

(4) The date the rental payments became delinquent.

(5) The length of time the tenant has remained in possession without paying rent.

(6) The amount of rent claimed due and delinquent.

(7) A statement that the written notice was served on the tenant in accordance with NRS 40.280.

(8) A copy of the written notice served on the tenant.

(b) The landlord or his agent may, in a peaceable manner, provide for the nonadmittance of the tenant to the premises by locking or otherwise.

3. No action may be taken under subsection 2 if, within 5 days after service of the notice, the tenant files an affidavit as provided in subsection 1. Further proceedings for the removal of the tenant shall be governed by NRS 40.290 to 40.420, inclusive.

\*　　\*　　\*　　\*　　\*

40.290 Parties defendant; persons bound by judgment. No person other than the tenant of the premises and the subtenant, if there be one, in actual occupation of the premises when the action is commenced, need be made parties defendant in the proceeding, nor shall any proceeding abate nor the plaintiff be nonsuited for the nonjoinder of any person who might have been made a party defendant; but when it appears that any of the parties served with process or appearing in the proceeding is guilty of the offense charged, judgment must be rendered against him. In case a person has become subtenant of the premises in controversy after the service of any notice in this chapter provided for, the fact that such notice was not served on such subtenant shall constitute no defense to the action. All persons who enter under the tenant, after the commencement of the action hereunder, shall be bound by the judgment the same as if they had been made parties to the action.

40.300 Contents of complaint; issuance and service of summons; temporary writ of restitution; notice, hearing and bond.

1. The plaintiff in his complaint, which shall be in writing, must set forth the facts on which he seeks to recover, and describe the premises with reasonable certainty and may set forth therein any circumstances of fraud, force or violence which may have accompanied the alleged forcible entry, or forcible or unlawful detainer, and claim damages therefor, or compensation for the occupation of the premises or both. In case the unlawful detainer charged be after default in the payment of rent, the complaint must state the amount of such rent.

2. The summons shall be issued and served as in other cases, but the court, judge or justice of the peace may shorten the time within which the defendant shall be required to appear and defend the action, in which case the officer or person serving the summons shall change the prescribed form thereof to conform to the time of service as ordered; but where publication is necessary the court shall direct publication for a period of not less than 1 week.

3. At any time after the filing of the complaint and issuance of summons, the court, upon application therefor, may issue a temporary writ of restitution; provided:

(a) That the temporary writ of restitution shall not issue ex parte but only after the issuance and service of an order to show cause why a temporary writ of restitution shall not be issued and after the defendant has been given an opportunity to oppose the issuance of the temporary writ of restitution.

(b) That the temporary writ of restitution shall not issue until the court has had an opportunity to ascertain the facts sufficiently to enable it to estimate the probable loss to the defendant and fix the amount of a bond to indemnify the party or parties against whom the temporary writ may be issued.

fendants' enforcement of their landlord lien, the lien laws have not been unconstitutionally applied to the instant plaintiffs. Thus, defendants argue, plaintiffs are without standing to sue.

██ The nature of the demands of due process under *Sniadach* was most clearly enunciated by Justice Harlan in his concurring opinion:

" . . . [D]ue process is afforded only by the kinds of 'notice' and 'hearing' which are aimed at establishing the validity, or at least the probable validity, of the underlying claim against the alleged debtor *before* he can be deprived of his property . . . ." (Emphasis supplied.) Sniadach v. Family Finance Corp., supra, 395 U.S. at 343, 89 S.Ct. at 1823.

This formulation was adopted by the Court in Fuentes v. Shevin, supra, 407 U.S. 67, 97, 92 S.Ct. 1983, 2002. While stressing that "the hearing must provide a real test" (id.), the Court, in *Fuentes*, noted that:

"Leeway remains to develop a form of hearing that will minimize unnecessary cost and delay while preserving the fairness and effectiveness of the hearing in preventing seizures of goods where the party seeking the writ has little probability of succeeding on the merits of the dispute." Id. at 97 n. 33, 92 S.Ct. 2002.

The underlying claim in the instant case is the debt arising from rental arrearages, for which the landlord has a lien on property belonging to plaintiffs (NRS § 108.510(1)(a)). Due process requires, then, that the probable validity of this claim be established at a hearing, with proper notice, before the lien is executed. See Collins v. Viceroy Hotel Corp., supra, 338 F.Supp. at 398. More precisely, plaintiffs must have been given notice and a *reasonable opportunity* for such a hearing prior to the seizure. Goldberg v. Kelly, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); and

see Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). But conditioning the right of debtors to be heard upon a preliminary showing, by affidavit or otherwise, that a valid defense to the underlying claim exists has been rejected by the Supreme Court as an improper limitation of Fourteenth Amendment rights when significant property interests are at stake. In focusing on Florida's replevin statute, the Court stated:

"[The debtors'] ultimate right to continued possession [of furniture and other goods] was, of course, in dispute. If it were shown at a hearing that the [debtors] had defaulted on their contractual obligations, it might well be that the sellers of the goods would be entitled to repossession. *But even assuming that* the [debtors] *had fallen behind in their installment payments, and that they had no other valid defenses, that is immaterial here. The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing.* 'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' Coe v. Armour Fertilizer Works, 237 U.S. 413, 424, 35 S.Ct. 625, 629, 59 L.Ed. 1027. It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing on the contractual right to continued possession and use of the goods." Fuentes v. Shevin, supra, 407 U.S. at 87, 92 S.Ct. at 1997. (Emphasis added.)

██ Under Nevada's unlawful detainer statues, if a tenant is allegedly guilty of unlawful detainer because he is in default in rent after notice to pay or

(c) That the temporary writ of restitution shall not issue until there has been filed with the approval of the court a good and

sufficient bond of indemnification in the amount fixed by the court.

surrender (NRS § 40.250, subd. 1(c)), the tenant is entitled to at least a hearing before restitution of possession to the landlord (NRS § 40.300(3)(a)), in which he may assert any defense in excuse, justification, or avoidance of his obligation to pay rent (Volpert v. Papagna, 83 Nev. 429, 435; 433 P.2d 533 (1967)), *provided* he files an affidavit that he is not in default in the payment of such rent (NRS § 40.253(1) and (3)). While this Court is not required to decide whether the requirement of a preliminary showing by affidavit is an unconstitutional restriction on the right to a hearing in an unlawful detainer action (an issue strongly influenced by the considerations expressed in Lindsey v. Normet, 405 U.S. 56, 92 S.Ct. 862, 31 L. Ed.2d 36 (1972)) and intimations of any conclusions on this issue are withheld, the clear mandate of *Fuentes* cannot be avoided where such a restriction is applied so as to condition the right to be heard prior to seizure of a tenant-debtor's basic household furniture and personal belongings. The instant plaintiffs cannot be deemed to have "waived" their right to a prior hearing simply because they failed to commit the perjury that would have been necessary in this case to give rise to a right to be heard. Procedural due process, as outlined in *Fuentes*, commands that the debtor be given the opportunity to be heard, an opportunity not contingent upon the advance showing of a valid defense. Here, this was not met.

Defendants also contend that under the terms of the lease agreement, plaintiffs waived their due process rights, and therefore there was no unconstitutional denial of those rights. To this end, defendants rely upon paragraph 6 of the Rental Agreement, which states:

"6. If default is made by Lessee in the payment of any part of the rent or other charges herein provided, and such default continues for five (5) days after written notice thereof to Lessee, or if default be made by Lessee in any of the covenants or agreements herein contained by Lessee to be performed, Lessor may, at any time, at Lessor's option, terminate this agreement and the tenancy hereby created, and may re-enter and retake said premises, retain possession thereof and exclude Lessee therefrom. Upon such entry Lessee shall be liable to Lessor for the rents due to the time of such re-entry and repossession, and, in addition to the sums as otherwise herein set forth, as follows: (a) for the installments to rent and other sums falling due hereunder, for the period after such entry during which the premises remain vacant, which sums shall be payable as they become due hereunder; (b) for all expenses, including commissions which may be incurred by Lessor from time to time during the term thereof for re-letting the said premises, which expenses shall be payable as they are incurred; and (c) while said premises are subject to any leases made by Lessor pursuant to this paragraph for the amount by which the monthly installments payable under such new lease or leases is less than the monthly installments or rent payable hereunder, which deficiency shall be payable monthly as the same is determined." (From Defendant Kessler's Affidavit in Support of Oppposition to Motion for Preliminary Injunction, Exhibit A, p. 1.)

The Supreme Court's discussion and rejection of a substantially identical argument in *Fuentes*, however, is equally controlling in the present circumstances. There the Court stated, 407 U.S. at pp. 95–96, 92 S.Ct. at 2002:

" . . . [A] waiver of constitutional rights in any context must, at the very *least*, be clear. We need not concern ourselves with the involuntariness or unintelligence of a waiver when the contractual language relied upon does not, on its face, even amount to a waiver.

"The conditional sales contracts here simply provided that upon a default the seller 'may take back,' 'may retake' or 'may repossess' merchan-

dise. The contracts included nothing about the waiver of a prior hearing. They did not indicate *how* or *through what process*—a final judgment, self-help, prejudgment replevin without a prior hearing—the seller could take back the goods. Rather, the purported waiver provisions here are no more than a statement of the seller's right to repossession upon occurrence of certain events. The appellees do not suggest that these provisions waived the appellant's right to a full post-seizure hearing to determine whether those events had, in fact, occurred and to consider any other available defenses. By the same token, the language of the purported waiver provisions did not waive the appellants' constitutional right to a preseizure hearing of some kind."

There is no waiver of plaintiffs due process rights in the clause of the agreement relied upon by defendants.

█ Because the manner in which plaintiffs' property was taken was constitutionally defective and plaintiffs have not waived their right to due process, plaintiffs have suffered the kind and quality of injury which entitles them to standing to bring this action.

### ISSUE

Should this Court nevertheless abstain from considering the constitutionality of the Nevada landlord lien laws?

### DISCUSSION

██ Defendants argue that abstention under Railroad Comm'n v. Pullman, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), is appropriate in this case because a state court determination of (1) whether the Rental Agreement is binding between the parties, and (2) whether the procedures of the forcible entry and detainer statutes of Nevada are a prerequisite to enforcement of a landlord lien, could conceivably result in removing or substantially altering the constitutional question presented by plaintiffs. In light of the discussion above, this argument must fail. As noted previously, it is irrelevant whether the Rental Agreement is binding between the parties since that agreement does not constitute a waiver of plaintiffs' constitutional right to due process of the law. And it is also immaterial whether the procedures of the Forcible Entry and Detainer Act condition the exercise of the Landlord Lien Act since, even if such were the case, those procedures do not pass constitutional muster where seizure of a tenant's private property is concerned. Abstention is improper where there is no controlling question of state law before the Court, "that is where no skein of state law must be disentangled, McNeese [v. Board of Education, 373 U.S. 668, 674, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963)], or where there is no ambiguity in the state law calling for interpretation by state courts." Klim v. Jones, 315 F.Supp. 109, 118 (N.D.Cal. 1970), citing Harman v. Forssenius, 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965); City of Chicago v. Atchison, T. & S. F. R. Co., 357 U.S. 77, 84, 78 S. Ct. 1063, 2 L.Ed.2d 1174 (1958); Bramlett v. Peterson, 307 F.Supp. 1311, 1321 (M.D.Fla.1969). The doctrine of abstention set forth in *Pullman* is inapplicable to this case.

### ISSUE

Are the statutes of the Nevada Landlord Lien Act unconstitutional insofar as they fail to require notice and a hearing before prejudgment seizure?

### DISCUSSION

█ As noted, defendants do not contest this issue. The last three years have seen an unbroken string of cases ruling lessor's lien schemes an unconstitutional denial of due process where those schemes do not embody provision for a preliminary notice and hearing before seizure of property of the debtor lessee, the statutory schemes constituting sufficient state action for such a de-

termination. See Hall v. Garson, 430 F.2d 430 (5th Cir. 1970); and see Barber v. Rader, 350 F.Supp. 183 (S.D.Fla. 1972); Gross v. Fox, 349 F.Supp. 1164 (E.D.Pa.1972); MacQueen v. Lambert, 348 F.Supp. 1334 (M.D.Fla.1972); Dielen v. Levine, 344 F.Supp. 823 (D.Neb. 1972); Musselman v. Spies, 343 F.Supp. 528 (M.D.Pa.1972); Collins v. Viceroy Hotel Corp., 338 F.Supp. 390 (N.D.Ill. 1972); Holt v. Brown, 336 F.Supp. 2 (W.D.Ky.1971); Santiago v. McElroy, 319 F.Supp. 284 (E.D.Pa.1970); Klim v. Jones, supra, 315 F.Supp. 109. It suffices here to say that the reasoning and result reached in these cases is applicable to the Nevada landlord lien laws, laws which work an unconstitutional denial of due process. And, as discussed above, this conclusion is not altered by the fact that in this case the provisions of Nevada's unlawful detainer laws were invoked prior to the challenged seizure; an *ex parte* hearing does not satisfy due process in this setting.

### ISSUE

ARE plaintiffs entitled to a preliminary injunction restraining defendants from enforcing the provisions of NRS §§ 108.510, 108.520 and 108.530 insofar as they authorize seizure and sale of plaintiffs' property without prior notice and hearing, and ordering defendants to restore plaintiffs' property?

### DISCUSSION

To deny plaintiffs the relief they seek would be to judicially complete the denial of due process thus far presented. The harm to plaintiffs—deprivation of their right to due process before their property may be seized—would not be remediable in such event. Hence, plaintiffs are entitled to the protection of injunctive relief.

A matter raised at the order to show cause hearing, however, causes concern for the protections, if any, that are to be accorded defendants in an exercise of this Court's equitable powers. Counsel for defendants have indicated that since the initiation of this suit, the plaintiffs have separated and the wife is presently seeking a divorce. Further, since the temporary restraining order was issued, ordering return of plaintiffs' property, the wife, Mary Jean Adams, has informed defendants that she does not wish them to return "her things" to the plaintiff husband. With defendants unable to sort out separate from community property, counsel for plaintiffs have stipulated that the property may remain in defendants' possession until resolution of the instant motion for preliminary injunction is obtained. To order a return of the property under these circumstances would be to work an equitable injustice against defendants who have mistakenly, though in good faith, felt their actions to have been constitutional. An order for restoration of plaintiffs' property should therefore be stayed until defendants have had a reasonable opportunity to resolve the matter in state court. In all other respects, however, plaintiffs should be given the injunctive relief they seek.

### CONCLUSION

Plaintiffs in this case have suffered a denial of their right to due process of law. The cause of action they present does not hinge upon issues of state law which would give basis to the doctrine of abstention. Though provided with notice of the underlying claim prior to seizure of their personal property, plaintiffs were denied the right to a hearing; a hearing must be accorded even if it does not appear that they have a valid defense to that underlying claim. The language of the Supreme Court in *Fuentes* indicating the command of the Fourteenth Amendment's due process clause in an analogous setting cannot be ignored by this Court. The Nevada Landlord Lien Act is unconstitutional on its face, and in the manner in which it was applied to these plaintiffs. Plaintiffs are entitled to preliminary injunc-

tive relief, with provision for the stay in the order of restitution noted above.

This opinion constitutes this Court's findings of fact and conclusions of law. Plaintiffs' counsel will prepare in proper form a preliminary injunction in accordance with Local Rule 19 of this Court.